UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**KELLY GREENS VERANDA VI CONDOMINIUM ASSOCIATION, INC.,**

    Plaintiff,

v.

Case No. 2:21-cv-72-SPC-NPM

**BLACKBOARD SPECIALTY INSURANCE COMPANY,**

    Defendant.

## ORDER

Before the court is plaintiff's motion to compel appraisal and stay litigation (Doc. 34). Defendant opposes appraisal on two grounds: (1) appraisal is inappropriate because it fully denied the claim; and (2) plaintiff forfeited[1] its right to appraisal. (Doc. 35). Since plaintiff forfeited appraisal, the court need not assess defendant's first argument.

**I.   Background**

Plaintiff Kelly Greens Veranda VI Condominium Association, Inc. brings this insurance-breach-of-contract action for losses allegedly caused by Hurricane Irma on or about September 10, 2017. At the time of the loss, Kelly Greens's property

---

[1] When litigants (and courts) characterize a passive failure to timely assert a right as a "waiver," they inappropriately conflate two distinct concepts: waiver and forfeiture. "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

was insured by defendant Blackboard Specialty Insurance Company. (Doc. 16 ¶¶ 6-10).

The policy contains a unilateral appraisal provision under which either party may demand that the amount of loss be determined by an appraisal panel. The policy contains the following appraisal provision:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
>
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

(Doc. 34-1 at 31).

Two days after the storm, Kelly Greens submitted an insurance claim. Kelly Greens reported wind damage to some trees surrounding its premises, but it reported no physical damage to any structures. After inspecting the property, Blackboard prepared an estimate for roughly $11,706.15 or $12,427.51 to repair a gate and for the removal of landscape debris.[2] Blackboard advised Kelly Greens on November

---

[2] A November 7, 2017 letter from a third party claims administrator on behalf of Blackboard reflected the total amount for repairs cost $11,706.15, which was below the deductible. (Doc. 34-4). Without citation, however, Blackboard claims it prepared an estimate for $12,427.51 for a gate repair and landscape debris removal. (Doc. 35 at 2).

7, 2017, that these costs fell below the applicable policy deductible. So Blackboard issued no payments. (Doc. 35 at 1-2; Doc. 34-4).

Blackboard reopened the claim on February 19, 2020, after Kelly Greens provided a repair estimate for about $656,000 to repair roof damage to the insured structures. In response, Blackboard retained an engineer—Rick LaMore—who determined there was no evidence of wind damage from Hurricane Irma to Kelly Greens's property. On March 27, 2020, Blackboard advised Kelly Greens of LaMore's findings and explained its resulting claim determination:

> We completed an investigation, which included an inspection by Sedgwick field adjuster Steve Kotzin and Roofing Expert, Rick LaMore of Newman Construction Consulting. Mr. LaMore found areas that exhibited previous repairs; however, the areas that were repaired were not due to wind damage during the hurricane. They were due to typical maintenance leaks at sunroofs, vent stacks and valleys. Mr. LaMore only found a few missing shingles. Mr. LaMore found a small amount of un-bonded shingle corners, less than 1% of the total square footage per building, that were not wind related. This was due to normal wear and tear and deterioration of the roof. Mr. LaMore determined that there was no wind damage to the buildings that required replacement of the roofs.
>
> Mr. LaMore did find a few shingles that were damaged by wind. He determined that the damage did not occurr [sic] during Hurricane Irma. The damage occurred recently and maybe even during separate incidents. This means that the damage occurred after the policy expiration date of 11-8-17. Mr. LaMore did prepare an estimate in the amount of $2,852.86 to repair the few wind damaged shingles that were found. Even if we consider the damage found to have occurred in one storm and during the policy period the cost to repair the damage is still well under the $25,000 non-hurricane windstorm deductible.

(Doc. 16-1 at 1-2).

The letter concluded: "As no direct physical damage was found to the buildings from wind during Hurricane Irma, [Blackboard] Specialty Insurance Company must respectfully deny payment of your claim." (Doc. 16-2 at 3).

On July 30, Kelly Greens filed a Civil Remedy Notice against Blackboard. In the notice, Kelly Greens incorporated a new repair estimate for about $708,000 and demanded that Blackboard pay the full claim. (Doc. 35 at 2).

Four months later, on November 24, 2020, Kelly Greens invoked appraisal for the first time. (Doc. 34-2). Kelly Greens sued in state court a few days later, which was eventually removed to this court. Blackboard's counsel asked whether Kelly Greens was withdrawing its pending request for appraisal, but plaintiff counsel did not respond. (Doc. 35 at 3).[3]

## II.   Law and Analysis

In Florida, a "party can [forfeit] its right to appraisal by actively participating in a lawsuit or engaging in conduct inconsistent with the right to appraisal." *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 3852731, *3 (M.D. Fla. Aug. 16, 2019), *reconsideration denied*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 4861196 (M.D. Fla. Oct. 2, 2019) (citations omitted). But "the question of [forfeiting an] appraisal

---

[3] Blackboard did not attach its Exhibit 1, which was the December 9, 2020 email correspondence. (Doc. 35 at 3 n.3).

is not solely about the length of time the case is pending or the number of filings the appraisal-seeking party made. Instead, the primary focus is whether the [movant] acted inconsistently with their appraisal rights." *Fla. Ins. Guar. Ass'n v. Branco*, 148 So. 3d 488, 493 (Fla. 5th DCA 2014).

Kelly Greens waited too long to invoke its right to appraisal and engaged in acts inconsistent with having the amount-of-loss issue resolved by an appraisal panel instead of the court. Kelly Greens did not mention appraisal in either its initial or amended complaints. (Docs. 12, 16). Also, Kelly Greens apparently made no mention of a desire to invoke appraisal during the Rule 26(f) conference.[4] (Doc. 35 at 3). The parties did not include any reference to appraisal in the case management report (Doc. 10), nor did they raise the issue to the court during the Rule 16 conference.

Moreover, the parties did not mention appraisal in their joint motion to amend the scheduling order, in which the parties represented they needed additional time to conduct discovery and prepare for a trial of the issues raised in the pleadings. (Doc. 21). And five months later when Blackboard moved for a further extension of deadlines in the schedule, Kelly Greens apparently made no mention of any desire

---

[4] Invoking appraisal easily falls within the scope of issues to be discussed during the Rule 26(f) as that scope is defined by rule and the Civil Action Order (Doc. 4).

to send amount-of-loss issues to an appraisal panel when it agreed not to oppose the extension. (Doc. 31).

Instead, Kelly Greens conducted discovery as if all aspects of the parties' claims and defenses were going to trial, and it did not invoke appraisal until a year after initiating suit and only after the parties' first attempt at mediation. (Docs. 26, 34).[5] This course of conduct is entirely inconsistent with the right to refer amount-of-loss questions to an appraisal panel and constitutes a forfeiture.

The circumstances here are in line with cases in which litigation activity was found to constitute a forfeiture of one's right to invoke appraisal. For example, in *Florida Insurance Guarantee v. Rodriguez*, 153 So. 3d 301, 304 (Fla. 5th DCA 2014), the court found the insureds acted inconsistently with, and forfeited, their right to appraisal. There, the insureds served several discovery requests, pursued other litigation activities including mediation, and never reserved their rights to appraisal. *Id.* at 302-304. And in *Versailles Sur La Mer Condominium Association v. Lexington Insurance Company*, No. 6:18-cv-1125-Orl-37TBS, 2018 WL 3827154, *5 (M.D. Fla. July 24, 2018), report and recommendation adopted, No. 6:18-cv-1125-Orl-37TBS, 2018 WL 3817758 (M.D. Fla. Aug. 10, 2018), the court likewise found a forfeiture, reasoning that the insured failed to invoke appraisal in

---

[5] The mediation deadline was continued and eventually suspended until the motion to compel appraisal was resolved. (Docs. 31, 33, 37).

its complaint or promptly after the case was filed and participated in extensive discovery. *Id.*

These cases iterate that the two most important considerations Florida courts consider when determining whether appraisal has been forfeited are timing and litigation activities. *See also Fla. Ins. Guar. v. Monaghan*, 167 So. 3d 511, 512-513 (Fla. 5th DCA 2015) (finding insureds forfeited appraisal by serving discovery requests, reasserting demand for jury trial, and participating in a case management conference and mediation before demanding appraisal). Simply stated, Kelly Greens acted inconsistent with having the amount-of-loss question resolved by an appraisal panel rather than a jury or the court.

### III. Conclusion

Appraisal is inappropriate because Kelly Greens forfeited appraisal by the lengthy delay in its invocation and its litigation activities. Therefore, Kelly Greens's motion to compel appraisal and stay litigation (Doc. 34) is **DENIED**. The court will issue a third amended case management and scheduling order separately.

**ORDERED** on September 26, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE